LAW RESEARCH SERVICE, INC., Respondent-Appellant, *v.* FRANKLIN CORPORATION, Appellant-Respondent.

First Department, December 13, 1966.

*Arthur Richenthal* of counsel (*David Abrams* with him on the brief), for respondent-appellant.

*James B. Henry* of counsel (*Kaye, Scholer, Fierman, Hays & Handler,* attorneys), for appellant-respondent.

*Per Curiam.* Pursuant to an agreement between the parties dated March 15, 1965, plaintiff issued and sold to defendant at par $125,000 principal amount of 8% debentures, due April 1, 1972, $78,750 thereof being convertible at defendant's option into shares of plaintiff's common stock. Section 9.10 of the agreement provides in pertinent part as follows: "In the event that any or all of the Convertible Debentures shall be prepaid, in part or in whole, prior to April 1, 1972, the holder thereof shall nevertheless have and continue to have, through April 1, 1972, the right to purchase from the Company, for cash, at a price equal to the Conversion Price from time to time, the number of shares of Common Stock issuable upon conversion of Debentures into which the principal amount so prepaid would, in the absence of such prepayment, have been convertible under the provisions of this Section 9 at the time of such purchase." All of the debentures have been paid, in the circumstances related below. Whether they were "prepaid" within the meaning of section 9.10 is the issue in dispute.

By letter to plaintiff dated July 6, 1965, and acting under provisions of the agreement permitting acceleration of the stated maturity of the debentures upon the occurrence of defined "Events of Default" defendant declared all of the debentures due and payable by reason of default in payment of the July 1, 1965 interest installment. Plaintiff contended it had made timely tender of the installment, but this was denied by defendant. On July 7, 1965 plaintiff tendered the amount of the installment, but it was rejected. Further declarations that the debentures were due and payable were made by defendant later in July for asserted failure of plaintiff to obtain insurance on the life of its president and to furnish defendant with certain financial statements. On October 11, 1965 plaintiff commenced an action for a declaration that it was not in default under the March 15, 1965 agreement. Counterclaims interposed by defendant alleged that the debentures had been declared due and payable by reason of "Events of Default" and demanded judgment for the principal amount of the debentures, together with interest and attorneys' fees. On or about January 26, 1966 (1) plaintiff paid defendant $125,000, together with an amount equal to interest thereon at the rate of 8% per annum for the period April 1, 1965 to July 7, 1965, and at the

rate of 6% per annum for the period July 8, 1965 to January 26, 1966; (2) plaintiff paid defendant's attorneys an agreed fee; (3) a stipulation was executed discontinuing the action, including the counterclaims, with prejudice; and (4) the debentures were surrendered to plaintiff stamped "Paid."

Plaintiff's common stock is traded in the over-the-counter market. The bid price per share was quoted at $2.375 on July 1, 1965; $2 on October 11, 1965; and $12.50 on January 26, 1966. On March 2, 1966, when the bid price was $28.25, defendant tendered plaintiff a check for $78,750 and notified plaintiff that it was exercising its right under section 9.10 of the debenture agreement to purchase 25,000 shares at the price of $3.15 a share, a figure computed as provided in the section. Plaintiff, however, deeming the section inapplicable, rejected the tender and brought the present action for a declaration that defendant has no rights under the section. Defendant counterclaimed for specific performance or, if not decreed, for damages in the amount of $627,500 (the difference between $28.25 and $3.15 applied to 25,000 shares). Both parties appeal from an order denying their respective motions for summary judgment.

We think the debentures were not "prepaid" within the contemplation of section 9.10. Grouped in section 5 of the debenture agreement are a number of provisions relating to "prepayments, optional or required." Section 5.1 requires plaintiff to "make prepayments of the Debentures * * * at par, without premium" in the amount of $6,250 quarterly commencing July 1, 1967. Subdivision (a) of section 5.2 provides that plaintiff "may, from time to time, apply to the prepayment of the Debentures * * * at par and without penalty, on any prepayment date specified in Section 5.1, a sum which, together with all other prepayments made under this Section 5.2(a) in the same fiscal year of the Company, will not exceed $25,000 in the aggregate." Subdivision (b) of section 5.2 provides that "in addition to the optional prepayments permitted under Section 5.2(a), the Company may, at its option, upon not less than 10 days' prior written notice to the holders of the Debentures, at any time and from time to time, after April 1, 1966, prepay the Debentures" in part or in whole at par plus a specified premium varying in amount with the 12 months period in which the "prepayment date" occurs.

Section 9.10 is not to be construed in isolation (see 10 N. Y. Jur., Contracts, § 207; 4 Williston, Contracts [3d ed.], § 618, subd. 3), and when read in the light of the considered delineation of the types and modes of prepayment—expressly denominated as such—in section 5, the conclusion seems inevitable that

"prepaid." in section 9.10 was intended to refer to section 5 prepayments. Defendant's notices of acceleration were sent pursuant to section 10, which provides that in the event of a default " the holders of not less than 25% of the unpaid principal amount of Debentures then outstanding may at their option, by written notice to the Company, declare all of the Debentures to be due and payable, whereupon the maturity of the then unpaid balance of all of the Debentures shall be accelerated and the same, and all interest accrued thereon, shall forthwith become due and payable ". We find nothing in section 10 which implies any relevant equivalence between prepayment of debentures and payment of debentures declared due by reason of default.

Defendant is an investment company federally licensed to finance " small-business concerns " (U. S. Code, tit. 15, §§ 632, 681). The debenture agreement, a document running 60 pages in the record, was prepared by defendant and with manifest care. It is hardly conceivable that section 9.10 would have been phrased as it was had the construction defendant now espouses been intended. We are not persuaded by the argument that unless that construction is adopted it would have lain within plaintiff's power to destroy defendant's rights under section 9.10 by committing an intentional default. The argument would base contract interpretation on the assumption that the parties will act in bad faith and it underestimates the ability of courts to frustrate acts of bad faith should one occur.

The order appealed from should be modified, on the law, to the extent of granting plaintiff's motion for summary judgment, and, as so modified, affirmed, with costs and disbursements to plaintiff.

Botein, P. J., McNally, Steuer, Capozzoli and Bastow, JJ., concur.

Order, entered on July 1, 1966, unanimously modified, on the law, to the extent of granting plaintiff's motion for summary judgment, and, as so modified, affirmed, with $50 costs and disbursements to plaintiff-respondent-appellant.